UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

DIANA WAGHER and
JASON WAGHER,

    Plaintiffs

-VS-

OCWEN LOAN SERVICING, LLC,

    Defendant.

_____/

CASE NO.:

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiffs, DIANA WAGHER ("Diana") and JASON WAGHER ("Jason"), (collectively "Plaintiffs") by and through the undersigned counsel, and sue, OCWEN LOAN SERVICING, LLC ("Defendant"), and in support thereof respectfully allege violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq*. ("FCCPA").

## INTRODUCTION

1. The TCPA was enacted to prevent companies like Ocwen Loan Servicing, LLC from invading American citizen's privacy and prevent abusive "robo-calls."

2. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, -US--, 132 S.Ct., 740, 745, 181, L.Ed. 2d 881 (2012).

3. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the

wall.'" 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242, 1256 (11th Cir. 2014).

4. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, Federal Communications Commission, (May 27, 2015), http://transition.fcc.gov/Daily_Releases/Daily_Business/2015/db0527/DOC-333676A1.pdf.

## JURISDICTION AND VENUE

5. This is an action for damages exceeding Seventy-Five Thousand Dollars ($75,000.00) exclusive of attorney fees and costs.

6. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

7. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014)

8. The current principal place of business of Defendant is in Palm Beach County, Florida. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(1), as it is the judicial district in the State where the Defendant resides.

## FACTUAL ALLEGATIONS

9. Plaintiffs are natural persons, and citizen of the State of Pennsylvania, residing in Philadelphia, Philadelphia County, Pennsylvania.

10. Plaintiffs are "consumers" as defined in Florida Statute § 559.55(8).

11. Plaintiffs are the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

12. Defendant is a corporation which was formed in Delaware with its principal place of business located at 1661 Worthington Road #100, West Palm Beach, Florida 33409, and which conducts business in the State of Florida through its registered agent, Corporation Service Company, located at 1201 Hays Street, Tallahassee, Florida 32301.

13. The debt that is the subject matter of this Complaint is a "consumer debt" as defined by Florida Statute §559.55(6).

14. Defendant is a "creditor" as defined in Florida Statute §559.55(5).

15. Defendant called Plaintiffs on each Plaintiff's cellular telephone approximately one thousand (1000) times in an attempt to collect a debt.

16. Defendant attempted to collect an alleged debt from Plaintiffs by this campaign of telephone calls.

17. Upon information and belief, some or all of the calls the Defendant made to Plaintiffs' cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or

3

sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiffs will testify that they knew it was an autodialer because of the vast number of calls received, and because they heard a pause when they answered their phones before a voice came on the line.

18. Plaintiff, Diana, is the subscriber, regular user and carrier of the cellular telephone number (267) *** -3917 and Plaintiff, Jason, is the subscriber, regular user and carrier of the cellular telephone number (215) *** -5820 and were the called parties and recipients of Defendant's calls.

19. Defendant placed an exorbitant number of calls to Plaintiff, Diana's, cellular telephone (267) *** -3917 and to Plaintiff, Jason's, cellular telephone (215) *** -5820 in an attempt to collect on a mortgage debt.

20. On several occasions since the Defendant's campaign of calls began, Plaintiff, Diana, and Plaintiff, Jason instructed Defendant's agent(s) to stop calling each of their cellular telephones.

21. In or about January of 2011, and on many other occasions, Plaintiff, Diana, answered an automated call from Defendant to her aforementioned cellular telephone number, held the line until an agent picked up, and informed an agent/representative of Defendant that the calls to her cellular phone were harassing, and demanded that they cease calling her aforementioned cellular telephone number.

22. In or about January of 2011, and on many other occasions, Plaintiff, Jason, answered an automated call from Defendant to his aforementioned cellular telephone number,

held the line until an agent picked up, and informed an agent/representative of Defendant that he wished for the calls to cease.

23. During the aforementioned phone calls with Defendant in or about January of 2011, Plaintiffs unequivocally revoked any express consent Defendant had for placement of telephone calls to Plaintiffs' aforementioned cellular telephone numbers by the use of an automatic telephone dialing system or a pre-recorded or artificial voice.

24. Each subsequent call the Defendant made to the Plaintiffs' aforementioned cellular telephone number was knowing and willful.

25. Despite Plaintiffs' repeated instructions on numerous occasions for Defendant to cease calling each cellular telephone, Defendant continued to place automated calls to Plaintiffs' cellular telephones against his clear wishes.

26. Defendant intentionally harassed and abused Plaintiffs on numerous occasions by calling several times in the same hour, during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

27. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as it did to Plaintiffs' cellular telephones in this case.

28. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice just as it did to Plaintiffs' cellular telephones in this case, with no way for the consumers, Plaintiffs, or Defendant to remove the number.

29. Defendant's corporate policy is structured so as to continue to call individuals like the Plaintiffs; despite these individuals explaining to Defendant they wish for the calls to stop.

30. Defendant has numerous other federal lawsuits pending against it alleging similar violations as stated in this Complaint.

31. Defendant has numerous complaints across the country against it asserting that its automatic telephone dialing system continues to call despite requested to stop.

32. Defendant has had numerous complaints from consumers across the country against it asking to not be called; however, Defendant continues to call the consumers.

33. Defendant's corporate policy provided no means for Plaintiff to have her number removed from Defendant's call list.

34. Defendant has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

35. Not a single call placed by Defendant to Plaintiffs were placed for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

36. Defendant willfully and/or knowingly violated the TCPA with respect to the Plaintiffs.

37. From each and every call placed without consent by Defendant to Plaintiffs' cell phone, each Plaintiff suffered the injury of invasion of privacy and the intrusion upon right of seclusion.

38. From each and every call without express consent placed by Defendant to Plaintiffs' cell phones, Plaintiffs suffered the injury of occupation of their cellular telephone lines and cellular phones by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from Defendant's calls to Plaintiffs.

39. From each and every call placed without express consent by Defendant to Plaintiffs' cell phones, Plaintiffs suffered the injury of unnecessary expenditure of their time. For

calls they answered, the time they spent on the call was unnecessary as they repeatedly asked for the calls to stop.

40. Even for unanswered calls, Plaintiffs had to waste time to unlock the phones and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiffs' cellular phones, which are designed to inform the user of important missed communications.

41. Each and every call placed without express consent by Defendant to Plaintiffs' cell phone was an injury in the form of a nuisance and annoyance to Plaintiffs. For calls that were answered, Plaintiffs had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiffs had to waste time to unlock the phones and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiffs' cellular phones, which are designed to inform the user of important missed communications.

42. Each and every call placed without express consent by Defendant to Plaintiffs' cell phone resulted in the injury of unnecessary expenditure of Plaintiffs' cell phone's battery power.

43. Each and every call placed without express consent by Defendant to Plaintiffs' cell phone where a voice message was left which occupied space in Plaintiffs' phone or network.

44. Each and every call placed without express consent by Defendant to Plaintiffs' cell phone resulted in the injury of a trespass to Plaintiffs' chattel, namely their cellular phone and their cellular phone services.

45. As a result of the calls described above, Plaintiffs suffered an invasion of privacy.

46. Plaintiff, Diana, was also affect in a personal and individualized way by stress, anxiety, nervousness, embarrassment, distress, interruption of work and aggravation

47. Plaintiff, Jason, was also affect in a personal and individualized way by stress, anxiety, nervousness, embarrassment, anger and aggravation

## COUNT I
### (Violation of the TCPA)

48. Plaintiff, Diana, fully incorporates and realleges paragraphs one (1) through forty seven (47) as if fully set forth herein.

49. Defendant knowingly and willfully violated the TCPA with respect to Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff, notified Defendant that she wished for the calls to stop.

50. Defendant repeatedly placed non-emergency telephone calls to Plaintiffs' cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff, Diana Wagher, respectfully demand a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT II
### (Violation of the FCCPA)

51. Plaintiff, Diana, fully incorporates and realleges paragraphs one (1) through forty seven (47) as if fully set forth herein.

52. At all times relevant to this action Defendant is subject to and must abide by the laws of the State of Florida, including Florida Statute § 559.72.

53. Defendant has violated Florida Statute § 559.72(7) by knowingly and willfully communicating with the debtor or any member of his or her family with such frequency as can reasonably be expected to harass the debtor or his or her family.

54. Defendant has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of his or her family.

55. Defendant contacted Plaintiff approximately 5 to 7 times per day from 2011 through 2017.

56. Defendant's calls begin at 7:30 a.m. and continue until 8:30 p.m., every day of the week including weekends.

57. Defendant's calls interrupted Plaintiff's work in supply chain purchasing.

58. Approximately 5 years ago, Plaintiff was once reprimanded at work for receiving personal phone calls when it was actually one of Defendant's unwanted telephone calls.

59. Defendant's calls have interrupted mealtimes.

60. Plaintiff's initial revocation of consent to call her cellular telephone took place when she asked Defendant to stop calling her because she had already spoken to one of Defendant's agents concerning Plaintiff's mortgage.

61. Plaintiff made subsequent revocations to Defendant; given the duration of years during which Defendant placed calls, it is anticipated that a review of Defendant's recordings will note the precise date of these subsequent revocations.

62. Nevertheless, Defendant's unwanted calls to Plaintiff's cellular telephone continued.

63. Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute § 559.77.

**WHEREFORE,** Plaintiff, Diana Wagher, respectfully demand a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT III
### (Violation of the TCPA)

64. Plaintiff, Jason, fully incorporates and realleges one (1) through forty seven (47) as if fully set forth herein.

65. Defendant knowingly and willfully violated the TCPA with respect to Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff, notified Defendant that he wished for the calls to stop.

66. Defendant repeatedly placed non-emergency telephone calls to Plaintiffs' cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff, Jason Wagher, respectfully demand a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT IV
**(Violation of the FCCPA)**

67. Plaintiff, Jason, fully incorporates and realleges paragraphs one (1) through forty seven (47) as if fully set forth herein.

68. At all times relevant to this action Defendant is subject to and must abide by the laws of the State of Florida, including Florida Statute § 559.72.

69. Defendant has violated Florida Statute § 559.72(7) by knowingly and willfully communicating with the debtor or any member of his or her family with such frequency as can reasonably be expected to harass the debtor or his or her family.

70. Defendant has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of his or her family.

71. Defendant contacted Plaintiff approximately 5 to 7 times per day from 2011 through 2017.

72. Defendant's calls begin at 7:30 a.m. and continue until 8:30 p.m., every day of the week including weekends.

73. Defendant's calls interrupted Plaintiff's work as a brick layer which requires precision and focus.

74. Defendant's calls have interrupted mealtimes.

75. Plaintiff's initial revocation of consent to call his cellular telephone took place when he asked Defendant to stop calling him because Defendant's agents were calling his cellular telephone all day long.

76. Plaintiff made subsequent revocations to Defendant; given the duration of years during which Defendant placed calls, it is anticipated that a review of Defendant's recordings will note the precise date of these subsequent revocations.

77. Nevertheless, Defendant's unwanted calls to Plaintiff's cellular telephone continued.

78. Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute § 559.77.

**WHEREFORE,** Plaintiff, Jason Wagher, respectfully demand a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

*/s/Janelle Neal*
Janelle Neal, Esquire
Florida Bar No.: 774561
Morgan & Morgan, Tampa, P.A.
One Tampa City Center
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tele: (813) 223-5505
Fax: (813) 223-5402
JNeal@forthepeople.com
MMartinez@forthepeople.com
*Attorney for Plaintiff*